UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON EDWARDS,<br><br>          Plaintiff,<br><br>    v.<br><br>DR. KALEKA, et al.,<br><br>          Defendants. | No.  1:25-cv-00120-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 27) |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed October 29, 2025.

**I.**

**BACKGROUND**

This action is proceeding on Plaintiff's deliberate indifference claim against Defendants Dr. Kaleka, Dr. Odeluga, and Dr. A. Shittu.  (ECF No. 9.)

Defendants filed an answer to the operative complaint on June 17, 2025.  (ECF No. 21.)

On July 2, 2025, the Court issued the discovery and scheduling order.  (ECF No. 25.)

1

On October 29, 2025, Defendants Kaleka and Shittu filed a motion for summary judgment for failure to exhaust the administrative remedies.[1]  (ECF No. 27.)  Plaintiff did not file an opposition and the time to do so has passed.  Local Rule 230(l).  Accordingly, Defendants' motion for summary judgment is deemed submitted without oral argument.  (Id.)

## II.

## LEGAL STANDARD

### A.    Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."   42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

2

1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

///

///

3

## III.

## DISCUSSION

### A.    Description of CDCR's Administrative Remedy Process

Since August 1, 2008, health care grievances involving medical services for incarcerated persons within the jurisdiction of the California Department of Corrections and Rehabilitation (CDCR) have been processed by California Correctional Health Care Services (CCHCS). (Declaration of K. Martin (Martin Decl.), ¶ 1.) The Health Care Correspondence and Appeals Branch (HCCAB) is the branch responsible for statewide oversight of health care grievances submitted by the incarcerated adult population. (Martin Decl., ¶ 2.)

Under California Code of Regulations, title 15, sections 3999.226 and 3999.227(a), incarcerated persons may grieve issues regarding health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care Grievance form. (Martin Decl., ¶ 3.) Once submitted, health care grievances are subject to two levels of review: health care grievances are processed at the institutional level by Health Care Grievance Offices at each institution and health care grievance appeals are processed at the headquarters level by the HCCAB, if requested by the incarcerated person. Cal. Code Regs. tit. 15, § 3999.226(a)(1) (2019). (Id.) Health care grievances are subject to a headquarters disposition before administrative remedies are deemed exhausted. Cal. Code Regs. tit. 15, § 3999.226(g) (2019). (Id.) Health care grievances are tracked and maintained in an electronic database known as the Health Care Appeals and Risk Tracking System (HCARTS). (Martin Decl., ¶ 4.)

### B.    Allegations of Complaint

Since 2003, Plaintiff has experienced pain in both of his knees and in his lower back. In 2003, Plaintiff was given a cane and knee brace.

In 2022, Plaintiff transferred to North Kern State Prison (NKSP). After medical assessment, it was determined that Plaintiff's cane and knee brace should be permanent accommodations, and he should be provided a mobility impaired vest.

On June 22, 2022, Dr. Odeluga instructed A-Yard correctional staff to confiscate Plaintiff's medical supplies. Plaintiff alleges that Dr. Odeluga, Dr. Kaleka, and Dr. Shittu were

4

all aware of his underlying medical condition prior to Dr. Odeluga instructing the confiscation of his medical devices.

**C.      Statement of Undisputed Facts[2],[3]**

1.      At all relevant times, Plaintiff Marlon Edwards was incarcerated at NKSP.  (ECF No. 8 (Compl.) at 5.)[4]

2.      At all relevant times, Defendants Kaleka, Odeluga, and Shittu were doctors at NKSP.  (Compl. at 5-6.)

3.      Plaintiff alleges he has a history of pain in both of his knees and lower back pain. (Compl. at 5.)

4.      Plaintiff alleges that while he was incarcerated at Salinas Valley State Prison in 2003, he was given a cane and knee brace.  (Compl. at 5.)

5.      Plaintiff alleges that once he arrived to NKSP in 2022, his medical records and physical conditions were assessed.  (Compl. at 5.)

6.      After review, it was assessed that Plaintiff's need for a cane should be placed on permanent, that a knee brace should be continually supplied permanently; and that a mobility impaired vest should be continually provided to Plaintiff.  (Compl. at 5.)

7.      On June 22, 2022, Plaintiff alleges Dr. Odeluga instructed A-Yard correctional staff to confiscate his medical supplies.  (Compl. at 5.)

8.      Plaintiff alleges all Defendants were responsible for and aware of his underlying health conditions before Dr. Odeluga confiscated his medical supplies.  (Compl. at 6.)

9.      Plaintiff alleges he exhausted his administrative remedies against all Defendants.

---

[2] Hereinafter referred to as "UF."

[3] Plaintiff did not file an opposition and did not admit or deny the facts set forth by Defendants as undisputed.  Local Rule 56-260(b).  Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).  A verified opposition to a motion for summary judgment may also be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on facts within the pleader's personal knowledge.  Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).  However, because plaintiff's opposition was not verified, it cannot be treated as an opposing affidavit.  Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006).

[4] All pagination references are based on the ECF numbering.

5

(Compl. at 5-6.)

10.     Since August 1, 2008, health care grievances involving medical, dental, and mental health services for incarcerated persons within the jurisdiction of the California Department of Corrections and Rehabilitation (CDCR) have been processed by California Correctional Health Care Services (CCHCS), under the Office of the Federal Receiver appointed in the class action litigation regarding prison health care, Plata v. Newsom, U.S. District Court for the Northern District of California, Case No. 3:01-cv-01351.  (Declaration of K. Martin (Martin Decl.), ¶ 1.)

11.     K. Martin is the Associate Director of the Health Care Correspondence and Appeals Branch (HCCAB), which is the branch responsible for statewide oversight of health care grievances submitted by the incarcerated adult population.  (Martin Decl., ¶ 2.)

12.     The California Code of Regulations (CCR), Title 15, §§ 3999.225 – 3999.237 governs the health care grievance process. Under these regulations, incarcerated persons may grieve issues regarding health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care Grievance form. Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a) (2019). Health care grievances are subject to two levels of review: health care grievances are processed at the institutional level by Health Care Grievance Offices at each institution and health care grievance appeals are processed at the headquarters level by the HCCAB, if requested by the incarcerated person. Cal. Code Regs. tit. 15, § 3999.226(a)(1) (2019). Health care grievances are subject to a headquarters disposition before administrative remedies are deemed exhausted. Cal. Code Regs. tit. 15, § 3999.226(g) (2019).  (Martin Decl., ¶ 3.)

13.     Health care grievances are tracked and maintained in an electronic database known as the Health Care Appeals and Risk Tracking System (HCARTS). The HCARTS is kept as a regularly conducted activity and the computer entries are made at or near the time of the occurrence by the employee who is processing the health care grievance. K. Martin is familiar with the HCARTS and can verify the status of an incarcerated person's health care grievance as well as their health care grievance history with CCHCS.  (Martin Decl., ¶ 4.)

14.     Plaintiff filed the relevant health care grievance, assigned tracking number NKSP

6

HC 22000950, and NKSP's Health Care Grievance Office received it for institutional level review on June 28, 2022.  (Martin Decl., ¶ 7, Ex. B at 5.)

15.   The grievance was accepted for processing at the institutional level and on July 8, 2022, Plaintiff was interviewed by C. Williams, Health Care Appeals Registered Nurse regarding the grievance.  (Martin Decl., ¶ 8, Ex. C.)

16.   Plaintiff was issued an institutional-level response dated August 24, 2022, with a disposition of no intervention.  (Martin Decl., ¶ 7, Ex. B at 9-10.)

17.   Plaintiff submitted his grievance for headquarters-level review, and it was received on October 11, 2022.  (Martin Decl., ¶ 7, Ex. B at 6.)

18.   Plaintiff was issued a headquarters-level response dated December 29, 2022, with a disposition of no intervention.  (Martin Decl., ¶ 7, Ex. B at 1-3.)

19.   The Headquarters-Level Response exhausted Plaintiff's administrative remedies as to his issues contained within the grievance.  (Martin Decl., ¶ 7, Ex. B at 1-3.)

**D.    Defendants' Motion**

Defendants Kaleka and Shittu argue that Plaintiff did not exhaust the administrative remedies for the claims against them.  More specifically, Defendants argue that Plaintiff only mentions Defendant Odeluga in his original health care grievance submitted for institutional-level review.  He then improperly added Dr. Shittu at the headquarters level, and he failed to submit a grievance naming Dr. Kaleka.

Although Plaintiff did not file an opposition, in the operative complaint, Plaintiff claims that he grieved against all three Defendants and attaches a health care grievance as "Exhibit E" naming all three Defendants.  (Compl. at 2, 5-6.)

As an initial matter, it is undisputed that an administrative grievance process was available to Plaintiff at NKSP, and he used it by submitting a grievance dated June 22, 2022.  (UF 14.)

1.    Defendant Shittu

Grievance No. NKSP HC 22000950, was received at the institutional level on June 28, 2022. (UF 14.)  Therein, Plaintiff grieved as follows:

7

> On 6-22-22, Chief CME, Dr. Odeluga directed A-y[a]rd correctional staff to confiscate my ADA medical supplies-which are documented as permanent, as well as my mobility impaired disability vest.  These supplies were given to me based on my medical [and] physical condition.  I have severe arthritis in both knees and lower back which causes numbness down my lower extr[e]mities and pain that causes my left leg to go out totally.  My right knee ACL-MCL is completely tore which naturally causes pain and instability.  My cane [and] knee braced needed.

(Martin Decl., Ex. B.)

It is clear that the sole issue raised in this grievance involved Dr. Odeluga's direction to custody staff to confiscate Plaintiff's medical supplies.  Dr. Shittu is not named in the grievance and there are no facts that would the prison (or Dr. Shittu) on notice of any alleged wrongdoing.  The appeal was denied at the institutional level on August 24, 2022, with a disposition of no intervention.  (UF 16.)

Plaintiff submitted the grievance appeal for headquarters-level review on October 11, 2022.  (UF 17.)  In this grievance appeal, Plaintiff added "there hasn't been any medical procedures done to help *fix the tears* in my knees-not by Dr. Odeluga nor Dr. Shittu or any other." (Martin Decl., ¶ 7, Ex. B at 7.) (emphasis added.)  An appeal of a healthcare grievance cannot include new issues not discussed in the underlying grievance.  See Cal. Code Regs. tit. 15, § 3999.229(a)(3), 3999.230(i), (j).  If an inmate raises new issues on appeal, the HCCAB can, but is not required to, address those issues in the appeal. (Id.)  The HCCAB declined to expand the scope of Plaintiff's grievance appeal and only responded to his initial grievances against Dr. Odeluga.  Indeed, the HCCAB response specifically stated:

> It is not appropriate to expand the health care grievance beyond the initial issue(s).  The Health Care Correspondence and Appeals Branch has the discretion whether to address new issues; it has been determined the new issue(s), *fix tears in knees*, not included in the originally submitted CDCR 602 HC, Health Care Grievance, will not be addressed at the headquarters' level per California Code of Regulations, Title 15, Section 3999.230(j).

(Martin Decl, Ex. B.) (emphasis in original.)

The law is clearly established that the requirements of the prison administrative system determine proper exhaustion. Cal. Code Regs. tit. 15, § 3999.230(i), (j); Smith v. Mendoza, No. 19-03750 BLF (PR), 2021 WL 930706, at *9 (N.D. Cal. Mar. 10, 2021) (finding that plaintiff did not exhaust his claims as to Defendants who were mentioned in an "upper-level appeal," but were

8

not named in the original CDCR 602 Form.); Brannon v. Covarrubias, No. 22-16728, 2024 WL 1253788, at *2 (9th Cir. Mar. 25, 2024) (affirming district court decision that plaintiff did not exhaust claim against nurse that he only raised in the appeal to the headquarters-level of review which did not address plaintiff's new claim.); Jones, 549 U.S. at 218.  Because Plaintiff improperly raised his allegations related to Dr. Shittu for the first time at the appellate level, he did not exhaust the administrative remedies as to those additional allegations.  Accordingly, the Court finds that grievance NKSP HC 22000950 failed to exhaust Plaintiff's administrative remedies as to Defendant Dr. Shittu.

### 2.    Defendant Kaleka

Defendant has submitted evidence that neither the grievance received at the institutional level nor at the headquarters level names Dr. Kaleka. (Martin Decl. ¶ 7, Ex. B.)

In the operative complaint, Plaintiff alleges that filed a grievance against Dr. Kaleka to the headquarters level and submits "Exhibit E" a Health Care Grievance Attachment in support of his argument which names as three Defendants.  (Compl. at 6, 21.)  However, K. Martin submits the packet of grievance NKSP HC 22000950, which does not include a copy of "Exhibit E" submitted by Plaintiff.  (Martin Decl. ¶ 7, Ex. B.)  In addition, there are no indicia the attachment was ever properly submitted or processed by the prison.  (Id.)  Furthermore, the attachment is not signed or dated by Plaintiff, and Plaintiff has not submitted any other evidence, such as a mail log, to demonstrate that it was submitted or processed at NKSP.  Nor does Plaintiff provide any other details that he actually submitted this attachment to the headquarters level review.  Consequently, the Court finds that this attachment does not create a genuine issue of material fact as to whether Plaintiff submitted the attachment to HCCAB for headquarters level review. See FTC v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010) ("[A court] need not find a genuine issue of fact if, in its determination, the particular declaration was uncorroborated and self-serving.").  Indeed, to find otherwise would mean that a prisoner who failed to submit an attachment to a grievance appeal for HCCAB headquarters level review need only complete an attachment after the fact to create a genuine dispute regarding whether he mailed the attachment to HCCAB.  Accordingly, Plaintiff failed to exhaust the administrative remedies as to the claim against Dr.

Kaleka.

## IV.

## ORDER AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1.    Defendants' Shittu and Kaleka's motion for summary judgment be granted; and

2.    The claims against Shittu and Kaleka be dismissed from the action, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 29, 2026**

STANLEY A. BOONE
United States Magistrate Judge

10