UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARLON EDWARDS,

Plaintiff,

v.

DR. ODELUGA,

Defendants.

No. 1:25-cv-00120-KES-SAB (PC)

FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(ECF No. 40)

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Odeluga's motion for summary judgment, filed May 28, 2026. (ECF No. 40.)

**I.**

**RELEVANT BACKGROUND**

This action is currently proceeding on Plaintiff's deliberate indifference claim against Defendant Dr. Odeluga.[1]

Defendant filed an answer to the operative complaint on June 17, 2025. (ECF No. 21.) On July 2, 2025, the Court issued the discovery and scheduling order. (ECF No. 25.)

[1] Defendants Kaleka and Shittu were dismissed without prejudice on March 30, 2026. (ECF No. 38.)

On May 28, 2026, Defendant Dr. Odeluga filed the instant motion for summary judgment. (ECF No. 40.) Plaintiff filed an opposition on July 6, 2026, and Defendant filed a reply on July 14, 2026. (ECF Nos. 42, 43.)

## II.

## LEGAL STANDARD

### A. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this

Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint

Since 2003, Plaintiff has experienced pain in both of his knees and in his lower back. In 2003, Plaintiff was given a cane and knee brace.

In 2022, Plaintiff transferred to North Kern State Prison (NKSP). After medical assessment, it was determined that Plaintiff's cane and knee brace should be permanent accommodations, and he should be provided with a mobility impaired vest.

On June 22, 2022, Dr. Odeluga instructed A-Yard correctional staff to confiscate Plaintiff's medical supplies. Plaintiff alleges that Dr. Odeluga was aware of his underlying medical condition prior to instructing the confiscation of his medical devices.

### B. Statement of Undisputed Facts[2]

1. Plaintiff Edwards was housed at North Kern State Prison (NKSP) at all times Relevant to this lawsuit. Declaration of M. O'Bryan (O'Bryan Decl.), Ex. A (Transcript of Deposition of Plaintiff (Pl. Dep.)) 9:17-20.)

2. Defendant Odeluga was the Chief Medical Executive (CME) at NKSP at all times relevant to this lawsuit. (Declaration of Defendant Odeluga (Def. Decl.) ¶ 1.)

3. As the CME, Defendant oversaw the medical and clinical operations within NKSP. He did not personally see patients in this role. (Def. Decl. ¶ 2.)

4. Under California Code of Regulations, title 15, section 3999.390, Durable Medical Equipment (DME) is provided to incarcerated individuals where it is medically necessary to ensure that patients have equal access to the institution's services, programs, and activities. (Declaration of A. Kaleka (Kaleka Decl.) ¶ 2; Def. Decl. ¶ 6.)

5. When medical staff determines that DME is no longer medically necessary, it is Rescinded and documented in a CDCR 7536 DME Supply Receipt, per title 15, section 3999.391.

[2] Hereinafter referred to as "UF."

The updated form is placed in the patient's electronic health record and also provided to the patient. (Kaleka Decl. ¶ 2; Def. Decl. ¶¶ 3, 4, 6, Exs. A, B.)

6. DME is a limited resource and may also pose a direct threat to the safety and Security of staff and other incarcerated individuals. Therefore, DME should be rescinded where no longer medically necessary. (Kaleka Decl. ¶ 2; Def. Decl. ¶ 3.)

7. A cane may be medically necessary where a patient has a mobility limitation that prevents him from accomplishing activities for daily living entirely. (Def. Decl. Ex. C.)

8. A knee brace may be medically necessary where a patient has ligament tears or instabilities, meniscal injuries, osteoarthritic, or knee pain which inhibits performing activities of daily living. An elastic unloading/offloading knee brace is only medically necessary to treat osteoarthritis where four criteria are met, one being persistent knee pain that limits activities of daily living. (Def. Decl. Ex. C.)

9. A mobility impaired disability vest may be medically necessary where a patient has a mobility impairment that makes him physically unable to sit on the ground during an emergency alarm. (Def. Decl. Ex. C.)

10. Plaintiff has a history of chronic pain in his lower back, left leg, and right knee. He suffers from osteoarthritis. He was previously diagnosed with partial tears of the medical collateral ligament (MCL) in both his knees. (See Pl. Dep. 23:10-18; see also ECF No. 8 at 8-10.)

11. Plaintiff arrived at NKSP on March 28, 2022.[3] (O'Bryan Decl. Ex. B.)

12. Plaintiff arrived at NKSP with a mobility vest, right knee brace, and cane. (O'Bryan Decl. Ex. C.)

13. On April 19, 2022, Plaintiff's primary care physician, Dr. Kaleka, observed him walking with no difficulty without his cane or knee brace. Plaintiff was able to touch his toes and get on and off the examination table. Plaintiff did not report difficulties with his ADLs and had full range of motion in his back. Plaintiff told Dr. Kaleka that he had left his cane and knee brace in his housing unit. (Kaleka Decl. Ex. A.)

---

[3] Plaintiff was previously housed at NKSP beginning in 2014 but was transferred to Wasco State Prison from March 15 to 28, 2022.

14. Plaintiff admits that he did not always need his cane. He primarily relied on it when he experienced inflammation or instability in his knees. Plaintiff admits that he did not have his cane that day. (Pl. Dep. 53:5-10, 57:17-19.)

15. Plaintiff received pain medication and had accommodation for a low bunk and lifting restrictions. He also had a series of arthroscopic surgeries and attended physical therapy. (Pl. Dep. 22:19-23:14, 26:4-18, 35:12-19; see also Kaleka Decl. Ex. A.)

16. On June 21, 2022, Defendant called Dr. Kaleka requesting that he discontinue Plaintiff's orders for a knee brace, cane, and mobility vest based on Dr. Kaleka's progress notes from April 19, 2022. (Kaleka Decl. ¶ 5, Exs. A, B.)

17. Per Defendant's request, Plaintiff's DME was discontinued on June 22, 2022. (Kaleka Decl. ¶ 5, Ex. B.)

18. On July 8, 2022, Plaintiff was interviewed by nurse Williams. Plaintiff told Williams that he did not have an immediate need for the cane. (Kaleka Decl. Ex. C.)

19. On October 4, 2022, Dr. Kaleka saw Plaintiff for a hypertension-related follow-up appointment. (Kaleka Decl. Ex. D.)

20. Plaintiff does not have medical education or training. (Pl. Dep. 54:25-55:3.)

21. Defendant did not see Plaintiff or personally observe how he walked. (Def. Decl. ¶ 9; see also Pl. Dep. 96:25-97:5.)

**C. Analysis of Defendant's Motion**

Plaintiff alleges that Defendant Dr. Odeluga was deliberately indifferent to his serious medical needs by discontinuing his cane and related DME.

Defendant argues "[t]he record shows that Defendant, as the Chief Medical Executive (CME) at NKSP, reasonably relied on Plaintiff's medical records that stated he could walk normally without the DME. Because DME is a limited resource, and equipment such as a cane can be used as a weapon, DME is discontinued if it is no longer medically necessary under the California Correctional Health Care Service's (CCHCS) DME and Medical Supply Formulary." (ECF No. 40 at 2.)

///

In opposition, Plaintiff argues that mobility-impaired vests are for "all that have mobility problems" and not "just for those who could not get on the ground." (ECF No. 42 at 2.) Plaintiff also argues that Defendant discontinued his DME as "a form of punishment." (Id. at 3.) Plaintiff also claims that he did not attend his medical visit with Dr. Kaleka without his DME. (Id. at 4.)

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122–23 (9th Cir.

2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Construing the evidence in a light most favorable to Plaintiff, he fails to demonstrate evidence that Dr. Odeluga subjectively knew and disregarded an excessive risk to Plaintiff's health and safety. It is undisputed that Plaintiff has a history of chronic pain in his lower back, left leg, and right knee. He suffers from osteoarthritis. He was previously diagnosed with partial tears of the medical collateral ligament (MCL) in both his knees. (UF 10.) Plaintiff arrived at NKSP on March 28, 2022, with a mobility best, right knee brace, and cane.[4] (UF 11, 12.)

Plaintiff admits that he did not always need his cane. (UF 14.) He primarily relied on it when he experienced inflammation or instability in his knees. (Id.) On April 19, 2022, Plaintiff's primary care physician, Dr. Kaleka, observed him walking with no difficulty without his cane or knee brace. Plaintiff was able to touch his toes and get on and off the examination table. Plaintiff did not report difficulties with his ADLs and had full range of motion in his back. Plaintiff told Dr. Kaleka that he had left his cane and knee brace in his housing unit. (UF 13.) Further, Plaintiff received pain medication and had an accommodation for a low bunk and lifting restrictions. He also had a series of arthroscopic surgeries and attended physical therapy. (UF 15.)

Defendant read the notes from Plaintiff's appointment with Dr. Kaleka on April 19, 2022. (UF 13.) As the CME, Defendant did not have his own caseload of patients and therefore did not see Plaintiff or personally observe how he walked. (UF 3, 21.) On June 21, 2022, Defendant called Dr. Kaleka requesting that he discontinue Plaintiff's orders for a knee brace, cane, and mobility vest based on Dr. Kaleka's progress notes from April 19, 2022. (UF 16.) Per Defendant's request, Plaintiff's DME was discontinued on June 22, 2022. (UF 17.) It is undisputed that DME is a limited resource, and equipment such as a cane may be used as a

[4] Plaintiff was previously housed at NKSP beginning in 2014 but was transferred to Wasco State Prison from March 15 to 28, 2022.

weapon, and DME should be discontinued when there are no indications that it is necessary. (UF 6.) Defendant reasonably relied on the progress notes by Dr. Kaleka in determining that Plaintiff's DME was not medically necessary. (Def Decl. ¶¶ 7-9.) Although Plaintiff contends that Dr. Kaleka's notes are wrong, he admits that he does not have evidence to support his position and he fails to present evidence to refute his own deposition testimony that he walked to the appointment without a cane. (Pl. Dep. 57:9-12, 58.) Indeed, Defendant's decision to discontinue Plaintiff's DME was consistent with the indications contained in the DME formulary. See, e.g., Hernandez v. Marcelo, No. 1:19-cv-01219-JLT-CDB (PC), 2023 WL 4710894, at *5 (E.D. Cal. July 24, 2023) (court found no deliberate indifference when Defendant doctor discontinued inmate's wheelchair, pursuant to the DME formulary, despite having a history of chronic pain and osteoarthritis because he was able to perform all daily activities and had full range of motion). Plaintiff's contention that it was Defendant's responsibility to know of Plaintiff's condition is unfounded. It is undisputed that as the CME, Defendant was in an administrative role who did not have his own caseload of patients and reasonably relied on Dr. Kaleka's notes. (UF 13); see also Watkins v. Singh, No. 2:13-CV-0416 KJM CKD, 2015 WL 136015, at *3 (E.D. Cal. Jan. 9, 2015), ("It is generally not deliberate indifference to defer to a specialist."); Coats v. Kimura, No. 2:09-cv-1830 KJM KJN P, 2013 WL 76288, at *20 (E.D. Cal. Jan. 4, 2013) (appeal reviewer entitled to rely on treating doctors' expertise); Butler v. Jong Yeoung Moon, No. 1:09–cv–2074 MJS P, 2011 WL 4591072, at *5 (E.D. Cal. Sept. 30, 2011). To the extent Plaintiff argues that Defendant was put on notice of his serious medical need by way of his grievance attached to his complaint, such grievance was submitted after Plaintiff's DME was discontinued, (ECF No. 8 at 14), and does not support Plaintiff's argument.

Here, Plaintiff suffered from chronic pain related to arthritis, and Plaintiff did not report difficulties in performing daily activities and was observed to have full range of motion of his back. (UF 10, 13.) A cane may be medically necessary where a patient has a mobility limitation that prevents him from accomplishing activities for daily living entirely. (UF 7.) Because Plaintiff could perform all daily living activities without difficulty, a cane was not medically necessary. Further, while a knee brace may be medically necessary to assist with osteoarthritis

and meniscal tears, the patient must exhibit persistent knee pain that limits daily living activities. (UF 8.) Plaintiff could walk normally without a brace and perform all daily living activities without difficulty, a knee brace was not medically necessary. (UF 13.) In addition, a mobility vest may be medically necessary if the patient is unable to sit down during an alarm. (UF 9.) However, Plaintiff was able to get on and off the examination table without any DME, and a mobility vest was therefore not medically necessary.

Moreover, there is no evidence that Defendant Odeluga acted with a culpable state of mind as he never personally treated Plaintiff, and there is no showing that he harbored a personal animus toward Plaintiff. (Def. Decl. ¶ 10; see also Pl. Dep. 98:7-9.) Defendant merely relied on Plaintiff's PCP's progress notes in making his decision which was consistent with CDCR policy. (UF 4-9; Def. Decl. ¶¶ 7-9.)

Lastly, Plaintiff's personal disagreement with the Defendant decision to discontinue the DME is insufficient to establish deliberate indifference for an Eighth Amendment claim. Plaintiff's subjective belief—that the discontinuation of the DME was "a form of punishment," does not prove that Defendant acted with deliberate indifference. Sanchez v. Vild, 891 F.2d at 242 (a patient's difference of medical opinion concerning the appropriate course of treatment is not sufficient to constitute deliberate indifference.)

Plaintiff has not met his burden of providing evidence from which a reasonable jury could conclude that Defendant's decision to discontinue Plaintiff's DME, was medically unacceptable under the circumstances or that Defendant chose that treatment in conscious disregard of an excessive risk to Plaintiff's health. See Farmer, 511 U.S. at 835. Therefore, the Court finds that no reasonable trier of fact could conclude that Defendant Odeluga purposefully acted with deliberate indifference to Plaintiff's serious medical needs when he discontinued the DME, and summary judgment should be granted in favor of Defendant.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 40) be granted; and

2. Judgment be entered in favor of Defendant Odeluga.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate [judge]'s factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 25, 2026**

STANLEY A. BOONE
United States Magistrate Judge